UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHARLES THEODORE PHILLIPS,

    Plaintiff,

v.                                          Case No.:  8:20-cv-944-DNF

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____

**OPINION AND ORDER**

Plaintiff Charles Theodore Phillips seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability and disability insurance benefits. The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed a joint legal memoranda setting forth their respective positions. For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I. Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision

### A. Social Security Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be severe, making the claimant unable to do his previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505–404.1511, 416.905–416.911.

### B. Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Winschel v.*

*Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Unlike findings of fact, the Commissioner's conclusions of law are not presumed valid and are reviewed under a de novo standard. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Maldonado v. Comm'r of Soc. Sec.*, No. 20-14331, 2021 WL 2838362, at *2 (11th Cir. July 8, 2021); *Martin*, 894 F.2d at 1529. "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066.

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. 20 C.F.R. § 404.1520(a)(4)(i), (b); 20 C.F.R. § 416.920(a)(4)(i), (b). At step two, the ALJ must determine whether the impairment or combination of impairments from which the claimant allegedly suffers is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c); 20 C.F.R. § 416.920(a)(4)(ii), (c). At step three, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii), (d); 20 C.F.R. § 416.920(a)(4)(iii), (d). If the ALJ finds the claimant's severe impairments do not meet or medically equal a listed impairment,

then the ALJ must determine whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv), (e)–(f); 20 C.F.R. § 416.920(a)(4)(iv), (e)–(f).

If the claimant cannot perform his past relevant work, the ALJ must determine at step five whether the claimant's RFC permits him to perform other work that exists in the national economy. 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). At the fifth step, there are two ways in which the ALJ may establish whether the claimant is capable of performing other work available in the national economy. The first is by applying the Medical Vocational Guidelines, and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40 (11th Cir. 2004); *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015).

The claimant bears the burden of proof through step four. *Atha*, 616 F. App'x at 933. If the claimant meets this burden, then the burden temporarily shifts to the Commissioner to establish the fifth step. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). If the Commissioner presents evidence of other work that exists in significant numbers in the national economy that the claimant is able to perform, only then does the burden shift back to the claimant to prove he is unable to perform these jobs. *Atha*, 616 F. App'x at 993.

### C.  Procedural History

Plaintiff filed an application for a period of disability and disability insurance benefits on July 13, 2017, alleging disability beginning June 9, 2016. (Tr. 109, 205-206). The application was denied initially on September 6, 2017, and upon reconsideration on December 29, 2017. (Tr. 88, 129). Plaintiff requested a hearing and on April 2, 2019, a hearing was held before Administrative Law Judge ("ALJ") Amber Downs. (Tr. 34-70). On May 20, 2019, the ALJ entered a decision finding Plaintiff not disabled from June 9, 2016, the alleged onset date, through December 31, 2018, the date last insured. (Tr. 15-28).

Plaintiff requested review of the hearing decision, but the Appeals Council denied Plaintiff's request on February 20, 2020. (Tr. 1-5). Plaintiff initiated the instant action by Complaint (Doc. 1) filed on April 23, 2020, and the case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 19).

### D.  Summary of ALJ's Decision

In this matter, the ALJ found Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2018. (Tr. 17). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 9, 2016, the alleged onset date, through his date last insured of December 31, 2018. (Tr. 17). At step two, through the date last insured,

the ALJ found that Plaintiff had the following severe impairments: "obesity, spinal disorders." (Tr. 17). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). (Tr. 19).

Before proceeding to step four, the ALJ found that Plaintiff had the following RFC:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform less than the full range of light work as defined in 20 [C.F.R. §] 404.1567(b). The claimant can occasionally lift or carry 20 pounds and frequently lift or carry 10 pounds. Sit for a period of 6 hours, stand for a period of 6 hours, walk for a period of 6 hours and push/pull as much as they can lift or carry. The claimant can occasionally climb ramps and stairs, occasionally climb ladders, ropes, or scaffolds and occasionally balance, stoop, kneel, crouch, and crawl. The claimant can have frequent exposure to unprotected heights, moving mechanical parts, humidity and wetness, and vibration.

(Tr. 20). At step four, the ALJ found Plaintiff was capable of performing his past relevant work as a real estate agent. (Tr. 28). The ALJ further found this work did not require the performance of work-related activities precluded by Plaintiff's RFC. (Tr. 28). The ALJ concluded that Plaintiff had not been under a disability from June 9, 2016, the alleged onset date, through December 31, 2018, the date last insured. (Tr. 28).

## II. Analysis

On appeal, Plaintiff raises three issues: (1) whether the ALJ's finding concerning Plaintiff's subjective complaints was supported by substantial evidence; (2) whether the ALJ's finding that Plaintiff could perform light work was supported by substantial evidence; and (3) whether the ALJ's finding that Plaintiff's mental issues cause no work limitations is supported by substantial evidence. (Doc. 22, p. 16, 36, 39). The Court will address each issue in turn.

### A. Whether the ALJ's finding concerning Plaintiff's subjective complaints was supported by substantial evidence

Plaintiff argues that the ALJ did not provide a sufficient explanation or good reasons why she found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Doc. 22, p. 19; Tr. 22). Plaintiff claims that the ALJ's summary of the medical records following this statement strongly support his allegations and are not inconsistent with them. (Doc. 22, p. 19-20).

A claimant may establish that he is disabled through his own testimony of pain or other subjective symptoms. *Ross v. Comm'r of Soc. Sec.*, 794 F. App'x 858,

867 (11th Cir. 2019) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). In such a case, a claimant must establish:

> "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain."

*Id.* (quoting *Dyer*, 395 F.3d at 1210).

When evaluating a claimant's testimony, the ALJ should consider: "(1) the claimant's daily activities; (2) the 'duration, frequency, and intensity' of the claimant's symptoms; (3) '[p]recipitating and aggravating factors'; (4) the effectiveness and side effects of any medications; and (5) treatment or other measures taken by the claimant to alleviate symptoms." *Id.* (quoting 20 C.F.R. §§ 404.1529(c), 416.929(c)(3)). The ALJ must consider these factors given all of the evidence of record. *Id.* And if the ALJ discredits this testimony, then the ALJ "'must clearly articulate explicit and adequate reasons for' doing so." *Id.* (quoting *Dyer*, 395 F.3d at 1210). The ALJ may consider the consistency of the claimant's statements along with the rest of the record in order to reach this determination. *Id.* "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995)); *see also Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2014). And an ALJ's decision will be affirmed as long as the decision is not a "broad

rejection which is not enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole." *Dyer*, 395 F.3d at 1211 (quotation and backets omitted).

While the ALJ determined at one point that Plaintiff's statements concerning intensity, persistence, and the limiting effects of these symptoms was not entirely consistent with the medical evidence, (Tr. 22), later in the decision the ALJ repeated this statement and provided reasons for it. (Tr. 27).[1] The ALJ found that the presence of pain is undisputed, but there is little medical evidence to support that the limitations "are of the chronicity and severity that [Plaintiff] alleges." (Tr. 27). The ALJ determined the longitudinal history of Plaintiff's medical records show routine and conservative treatment of his back issues. (Tr. 27). In support of this statement, the ALJ noted Plaintiff made infrequent trips to the doctor for the allegedly disabling symptoms. (Tr. 27). He also had no hospitalizations for any physical issues, including back pain, shoulder pain, knee pain, or issues related to diabetes. (Tr. 27).

Plaintiff argues that the ALJ ignored the fact that Plaintiff had no medical insurance since 2016 and had to pay out-of-pocket for each visit and for medications. (Doc. 22, p. 24). In evaluating a plaintiff's symptoms and their functional effect, "the

---

[1] The ALJ's decision unintentionally omitted the word "not" in the following sentence, but from the context, the meaning is clear: "After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are [not] supported by the medical evidence of record." (Tr. 25-26).

ALJ may not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue medical treatment without first considering any explanations that might explain the failure to seek or pursue treatment." *Beegle v. Soc. Sec. Admin., Com'r*, 482 F. App'x 483, 487 (11th Cir. 2012). An ALJ must consider evidence showing a plaintiff is unable to afford medical care before denying benefits based on non-compliance with care. *Id.* (citing *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003)). When an ALJ relies on noncompliance with prescribed medical treatment as the "sole ground for the denial of disability benefits," and the record contains evidence that a plaintiff was unable to afford the prescribed medical treatment, then the ALJ must determine whether a plaintiff could afford the prescribed medical treatment. *Ellison*, 355 F.3d at 1275. If a court determines the failure to follow prescribed medical treatment is not one of the "principal factors in the ALJ's decision," then the ALJ is not required to delve into a plaintiff's ability to pay, and this failure is not reversible error. *Brown v. Comm'r of Soc. Sec.*, 425 F. App'x 813, 817 (11th Cir. 2011).

At the hearing, the ALJ asked Plaintiff why he did not have the recommended lumbar and possible cervical surgery. (Tr. 48-49). Plaintiff responded that he did not have the money or insurance to have the surgery. (Tr. 49). In the decision, the ALJ acknowledged that doctors recommended back surgery, but Plaintiff wanted to obtain insurance before discussing any further surgery (Tr. 21, 23). Thus, the ALJ

was aware of Plaintiff's financial circumstances. As summarized by the ALJ, and even with these financial constraints, Plaintiff was able to visit doctors as needed, able to obtain medication refills, and never sought hospitalization for his complaints. (Tr. 22-26). Moreover, the ALJ did not deny benefits solely on Plaintiff not following a prescribed treatment plan.

The ALJ also found that Plaintiff was prescribed and took appropriate medications for the alleged impairments, and the record suggests the medications "have been relatively effective in controlling the claimant's symptoms." (Tr. 27). Plaintiff argues the evidence shows that he repeatedly stated that the medications did not help to control the pain. (Doc. 22, p. 25). At the hearing, Plaintiff testified that the medications do not really help with the pain, but they numb the brain to allow him to get some rest and afford some help when he sleeps. (Tr. 52). Plaintiff cites one medical record where he told Maurice Tom Pack, M.D. that two of his pain medications were not helping with the pain. (Tr. 329). Plaintiff also told consultative examiner, Dr. Ricardo Varas, that the pain medications prescribed by his doctors gave him only mild relief. (Tr. 364). In the Supplemental Pain Questionnaire, however, Plaintiff stated that his pain was relieved in part by pain medication, which dulls the pain for 1-2 hours. (Tr. 20, 282). Further, arguably Plaintiff continues obtaining prescriptions for pain medications and, if as ineffective as Plaintiff claims,

then there is no explanation as to why he continues to seek them. (*See*, *e.g.*, Tr. 337, 340, 357).

The ALJ also determined that Plaintiff is generally described to be in no acute distress and ambulates without use of an assistive device. (Tr. 27). Plaintiff does not challenge the factual basis for these statements. (Doc. 22, p. 25-26). Rather, Plaintiff questions these statements and argues that being in "no acute distress," means "no obvious sign of *acute* illness or injury" and a person who appears in "no acute distress" may appear well or may appear "with a serious chronic condition not visible to the naked eye, such as chronic pain . . ." (Doc. 22, p. 26). Likewise, Plaintiff argues the finding that he ambulates without a cane is not inconsistent with his subjective complaints, especially when he has used a cane or crutch at times. (Doc. 22, p. 26).

Factually, the ALJ's findings are supported by the evidence of record and Plaintiff does not contest these findings. In further support, the ALJ found:

> At the consultative evaluation, motor strength was 5/5 in all extremities, and sensation was intact to pinprick and touch over upper and lower extremities. Forward flexion, extension, lateral flexion and rotation of the lumbar spine were limited with tenderness noted. However, range of motion of the cervical spine, shoulders, elbows, wrists, hands, knees, hips, and ankles, were within normal limits. Although the presence of pain is undisputed, there is little medical evidence of record to support a determination that his limitations are of the chronicity and severity that he alleges. The record does not contain any opinions from treating or examining physicians indicating that the claimant is disabled or even has limitations greater than the ones determined in this decision.

(Tr. 27). Nor has Plaintiff cited to any treating or examining physicians who have indicated that he has limitations greater than those accounted for in the RFC and decision. For these reasons, the Court finds the ALJ's consideration of Plaintiff's subjective complaints is supported by substantial evidence.

### B. Whether the ALJ's finding that Plaintiff could perform light work was supported by substantial evidence

Plaintiff argues that ALJ erred in finding Plaintiff capable of performing his past relevant work as a real estate agent, which required the ability to perform work at a light exertional level. (Doc. 22, p. 36). Plaintiff claims substantial evidence does not support this finding. (Doc. 22, p. 36).

Prior to step four, the ALJ must assess Plaintiff's RFC, which is the most he can do despite his limitations. 20 C.F.R. § 404.1545(a). It consists of a claimant's "impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what [a claimant] can do in a work setting." 20 C.F.R. § 404.1545(a). An ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the action. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), (3). So the ALJ must consider *all* of a claimant's medically determinable impairments, including those that are not "severe." 20 C.F.R. § 404.1545(a)(2); *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268 (11th Cir. 2019). "The ALJ makes this determination by considering a

claimant's physical, mental, and other abilities affected by the impairment." *Id.* (citing 20 C.F.R. § 404.1545(b)-(d)).

Plaintiff argues the medical evidence does not support that he is able to stand and walk for a total of 6 hours in an 8-hour day, a requirement for a full range of light work. (Doc. 22, p. 36). Plaintiff cites consultative medical examiner, Dr. Varas's conclusion that Plaintiff "was able to ambulate, had difficulty, but did not require assistive device." (Doc. 22, p. 36; Tr. 369). Dr. Varas noted Plaintiff had difficulty getting up and out of the chair due to back pain, had difficulty getting on and off the exam tables due to back pain, had difficulty ambulating but did not use an assistive device, and had abnormal gait that was markedly antalgic due to kyphosis (curvature of the spine). (Doc. 22, p. 36; Tr. 366). Even though Dr. Varas noted these difficulties during the examination, he only found Plaintiff limited in the ability to bend or stoop, which the ALJ accounted for in the RFC. (Tr. 20, 369). While Plaintiff suggests Dr. Varas' examination findings support greater limitations, Dr. Varas made no such findings. For these reasons, the ALJ's RFC finding is supported by substantial evidence.

C. **Whether the ALJ's finding that Plaintiff's mental issues cause no work limitations is supported by substantial evidence**

Plaintiff claims that substantial evidence does not support the ALJ's finding that Plaintiff's mental issues do not cause more than minimal limitations in his ability to perform basic mental work activities. (Doc. 22, p. 39). Plaintiff relies on

consultative examiner Sara Malowitz's Psy.D.'s Psychological Evaluation. (Doc. 22, p. 39-40). Specifically, Plaintiff cites Dr. Malowitz's findings that Plaintiff's mental health symptoms "would best be characterized as moderate," and her summary that his mental health symptoms "appear to be moderately impacting activities of daily living, vocational performance, and interpersonal interactions. Current prognosis for Mr. Phillips is guarded." (Doc. 22, p. 39). Plaintiff also argues that the ALJ cannot rely on non-examining agency psychologists because their opinions are entitled to little weight and do not constitute substantial evidence. (Doc. 22, p. 39-40).

The same legal authority concerning an RFC determination applies to the present issue. Basically, "[t]he ALJ makes this determination by considering a claimant's physical, mental, and other abilities affected by the impairment." *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268 (11th Cir. 2019). (citing 20 C.F.R. § 404.1545(b)-(d)). Here, Dr. Malowitz conducted a consultative Psychological Evaluation in August 2017. (Tr. 353-55). Dr. Malowitz noted that Plaintiff reported his current mental health condition as being remarkable for anxiety. (Tr. 354). Plaintiff denied having any significant history of mental health treatment. (Tr. 354). Dr. Malowitz found, "[t]he current level of mental health symptoms would best be characterized as moderate." (Tr. 354). Plaintiff also reported to Dr. Malowitz that his last "job ended because of his physical difficulties. The longest job was 8 years.

He is unable to return to work because of the severity of his physical problems." (Tr. 354).

On examination, Dr. Malowitz found Plaintiff alert and oriented to person, place, situation, and time, and found no gross gait abnormalities. (Tr. 354). The rate and quality of speech was unremarkable, and the content was relevant, coherent, and logical. (Tr. 354). Plaintiff demonstrated good attention and concentration, his mental flexibility appeared good, and he could complete simple calculations at an appropriate processing speed. (Tr. 354). He completed all verbal commands without error and all written tasks as well. (Tr. 355). His immediate and remote memory appeared to be good, but his recent memory appeared to be moderately impaired because he was able to recall only 1 of 3 words presented after a short delay. (Tr. 355). Dr. Malowitz found Plaintiff had: good mental computation skills; adequate social skills, adequate abstract reasoning, judgment, and insight; his overall intelligence was average; his general thought processes coherent, logical and goal directed; his thought form and content age appropriate and unremarkable; no history of suicidal or homicidal attempts or ideations; and no hallucinations or delusions. (Tr. 355). Even with these generally normal findings, Dr. Malowitz concluded Plaintiff's "mental health symptoms based on report and clinical observations appear to be moderately impacting activities of daily living, vocational performance, and interpersonal interactions. Current prognosis for Mr. Phillips is guarded. In regards

to financial management, Mr. Phillips is recommended to manage benefits and financial decisions." (Tr. 355). She included no specific work-related or other limitations.

The ALJ thoroughly summarized Dr. Malowitz's findings, including her finding that Plaintiff's recent memory appeared to be moderately impaired. (Tr. 24-25). The ALJ credited the opinions of State Agency psychologists, James Levasseur, Ph.D. and Richard K. Lyon, Ph.D. who both determined Plaintiff's mental impairments were not severe. (Tr. 26). The ALJ found these opinions supported by the record because Plaintiff's routine mental health treatment was provided by his primary care provider and he had generally normal mental status examinations during his clinical visits. (Tr. 26). The ALJ found the records supports Plaintiff's ability to function independently. (Tr. 26, 27). The ALJ also found:

> There is no credible indications of psychosis, thought disorder, or malignant psychopathology. Mental status examinations showed that recent and remote memory functions are grossly intact, the claimant is well oriented, and he has no overtly unusual behaviors or mannerisms. Medications are prescribed by his primary care doctor and he is not currently engaged in outpatient mental health treatment. There is no documented history of inpatient psychiatric hospitalizations. The record does not suggest that his daily living skills, relational abilities, or cognitive efficacy, is routinely or especially, affected by psychological symptoms. The records support that the mental medically determinable impairments do not significantly limit his overall functionality or ability to do basic work activities.

(Tr. 27). The ALJ thoroughly reviewed the medical records in evidence and considered: Plaintiff's mental status examinations were generally normal; his

primary care doctor prescribed his medications for his mental impairments; he was not treated by a mental health professional; and his daily living skills, relational abilities, or cognitive efficacy were not routinely affected by his psychological symptoms. For these reasons, the ALJ concluded that Plaintiff's mental impairments did not affect his ability to do basic work activity. Plaintiff also reported he was unable to return to work due to physical not mental problems, and Dr. Malowitz included no work-related limitations based on Plaintiff's mental impairments in her Psychological Evaluation. (Tr. 354). Substantial evidence supports the ALJ's RFC assessment as to Plaintiff's mental health impairments.

### III.    Conclusion

For the reasons stated, the decision of the Commissioner is **AFFIRMED**. The Clerk of Court is directed to enter judgment consistent with this opinion, terminate all deadlines, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on August 20, 2021.

_____
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties